*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

No. 13-CV-169

KARL KENNEDY AND LISA KENNEDY, APPELLANTS,

v.

CITY FIRST BANK OF D.C., N.A., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-9965-11)

(Hon. Laura A. Cordero, Trial Judge)

(Submitted January 23, 2014                  Decided April 3, 2014)

*Richard J. Bianco* was on the brief for appellants.

*Kenneth M. Misken* was on the brief for appellee.

Before WASHINGTON, *Chief Judge*, BLACKBURNE-RIGSBY, *Associate Judge*, and FARRELL, *Senior Judge*.

FARRELL, *Senior Judge*: Appellants Karl Kennedy and Lisa Kennedy appeal from the trial court's denial of their motion to vacate the default judgment the court had entered in favor of appellee, City First Bank of D.C., N.A. ("City First"). Appellants claim error by the court in concluding that City First could properly bring its underlying suit against appellants in Superior Court because the restriction on the right to sue contained in D.C. Code § 29-105.02 (2012 Repl.) is preempted

by The National Bank Act, 12 U.S.C. § 24 (2008) (the "NBA"). Appellants cite additional error in the trial court's application of the factors listed in *Walker v. Smith*, 499 A.2d 446, 449 (D.C. 1985), to be considered in ruling on a request to vacate a default judgment. We affirm.

## I.

On December 20, 2011, City First filed a complaint in Superior Court to enforce appellants' guaranty obligations that required them to assume responsibility for any debt owned under a loan made by City First to Wines & Spirits Expo, LLC ("Wines & Spirits"), a D.C. limited liability company owned by appellants' Delaware limited liability company, The Kennedy Group, LLC. Wines & Spirits had defaulted on the loan and filed a bankruptcy petition, leading to the sale of its assets from which City First had received $475,000. On December 20, 2011, City First filed a complaint in Superior Court to recover the deficiency from appellants. On May 16, 2012, City First was granted a default judgment when appellants failed to file any responsive pleadings. More than five months later, on November 2, 2012, appellants filed a motion to vacate the default judgment, which the trial court denied.

## II.

City First is a national banking association organized and existing under federal law. It is not registered to do business in the District of Columbia. Appellants therefore claim that the trial court erred in ruling that City First could lawfully bring suit in Superior Court, because D.C. Code § 29-105.02 bars a "foreign filing entity" from maintaining an action in the District of Columbia "unless it is registered to do business in the District." D.C. Code § 29-105.02 (b).[1] The trial court ruled that the NBA preempts the application of § 29-105.02 to an entity such as City First that exists under the auspices of the federal statute.[2]

---

[1] Appellants accordingly argue that, in moving to set aside the default judgment, they were relieved of having to file "a verified answer [to the complaint] setting up a defense sufficient if proved to bar the claim in whole or in part," because they "assert[ed] a lack of subject-matter . . . jurisdiction." Super. Ct. Civ. R. 55 (c).

[2] 12 U.S.C. § 24 provides in relevant part:

> Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power . . . [t]o sue and be sued, complain

(continued...)

Although the trial court was plainly right, the issue is one of first impression in this jurisdiction, and as a question of law we decide it *de novo*. *See Plummer v. United States*, 43 A.3d 260, 273 (D.C. 2012).

Courts have identified several ways in which, under the Supremacy Clause, U.S. CONST. art. VI., cl. 2., federal law may preempt state law, expressly or impliedly. *See Murray v. Motorola, Inc.*, 982 A.2d 764, 771-72 (D.C. 2009); *In re Couse*, 850 A.2d 304, 308 (D.C. 2004). One way is "by implied or conflict preemption," which operates "where compliance with both federal and state regulations is a physical impossibility . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objecti[ves] of Congress." *Couse*, 850 A.2d at 308 (internal quotation marks omitted). That form of preemption is controlling here.

"[N]ational banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks'

---

(...continued)
>> and defend, in any court of law and equity, as fully as
>> natural persons.

12 U.S.C. § 24 (2008).

functions." *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 248 (1944); *see Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) ("[W]e have repeatedly made clear that federal control shields national banking from unduly burdensome . . . state regulation."). The Supreme Court has "interpret[ed] grants of both enumerated and incidental 'powers' to national banks as grants of authority . . . ordinarily pre-empting . . . contrary state law." *Watters* at 12 (quoting *Barnett Bank of Marion Cnty. v. Nelson*, 517 U.S. 25, 32 (1996)).

D.C. Code § 29-105.02 (b), as explained, prohibits "a foreign filing entity" from "maintain[ing] an action or proceeding in the District unless it is registered to do business in the District." The statute defines "'foreign,' with respect to an entity, [to] mean an entity governed as to its internal affairs by the law of a jurisdiction other than the District," a definition inclusive of all national banks. D.C. Code § 29-101.02 (14).[3] The NBA, by contrast, permits a national banking association "[t]o sue . . . in any court of law and equity" provided it has made and filed the necessary "articles of association and an organization certificate." Note 2,

___

[3] The United States District Court for the District of Columbia has opined that national banks are foreign corporations for purposes of service of process under Title 29 of the D.C. Code. *See Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 128-29 (D.D.C. 2013) (finding that appellant "correctly [] alleged that Capital One is a foreign corporation") *appeal dismissed*. 13-7065, 2013 WL 3357830 (D.C. Cir. June 13, 2013).

*supra*. Jurisdictions with similar state statutes have concluded either that those statutes conflicted with and were preempted by the NBA, or that there is no conflict preemption because the statutes by their terms do not treat national banks as "foreign corporations." *Compare In re Hibernia Nat'l Bank*, 21 S.W.3d 908, 909-910 (Tex. App. 2000) (NBA preempts application of a Texas statute that would "infringe upon [federally granted rights] because it would require a foreign bank to obtain a certificate of authority before it could maintain a suit in [Texas]"), *with Steward v. Atl. Nat'l Bank of Boston*, 27 F.2d 224, 228 (9th Cir. 1928) (Arizona statute requiring registration for "foreign corporations" to "carry on, do or transact any business" in Arizona does not apply to national banks, which are not foreign corporations under the Arizona statute); *Indiana Nat'l Bank v. Roberts*, 326 So. 2d 802, 802-03 (Miss. 1976) (same); *State Nat'l Bank of Connecticut v. Laura*, 256 N.Y.S. 2d 1004, 1006 (Co. Ct. 1965) (national banks are "moneyed corporations" excepted from the requirements of the state statute, but if "[c]ontrary construction [were] to be given to these statutes, in the case of a national banking corporation, such statutes would be clearly unconstitutional").

No purpose would be served by straining to except national banks from the class of "foreign filing entit[ies]" as defined by the District's statute. Therefore, § 29-105.02 (b) conflicts with and is preempted by the NBA, because

national banks fall within the local statute's definition of a "foreign filing entity," which infringes on compliant national banks' ability to maintain suits in the District "as fully as natural persons," in accordance with the NBA. Indeed, the intent naturally inferable from the NBA's language is to relieve national banks from having to meet manifold, and potentially divergent, registration requirements in the fifty states. The trial court did not err, therefore, in concluding that it had subject matter jurisdiction over City First's suit.[4]

## III.

Appellant's remaining claim of error may be dealt with quickly. "When reviewing the denial of a motion to vacate a default judgment, we consider the particular facts of the case to determine 'whether the movant had actual notice of the proceeding, acted promptly after learning of the default judgment, proceeded in good faith, and presented a prima facie adequate defense, and also whether the non-moving party would be prejudiced.'" *Venison v. Robinson*, 756 A.2d 906, 910

---

[4] We reject appellants' argument that meaning should be attributed to the fact that "Congress did not undertake any action to disapprove of the [District's statute]." "[W]e resist reading congressional intent into congressional inaction." *DePierre v. United States*, 131 S. Ct. 2225, 2236 n.13 (2011) (quoting *Kimbrough v. United States*, 552 U.S. 85, 106 (2007)); *see In re McBride*, 602 A.2d 626, 637 (D.C. 1992) ("Congressional inaction should not be our guide.").

(D.C. 2000) (quoting *Mewborn v. U.S. Life Credit Corp.*, 473 A.2d 389, 391 (D.C. 1984)); *see also Walker*, 499 A.2d at 449. The record demonstrates that appellants had actual notice of the claim by February 2012, but failed to act promptly – indeed, "demonstrate[ed] a complete lack of good faith," as the trial court found – by not contacting opposing counsel or filing any pleadings with the court until four months after the default judgment was entered.[5] Further, as the court concluded, appellants were estopped from presenting their various claims of misrepresentation as "a prima facie adequate defense," because in the Wines & Spirits bankruptcy case they had conceded that City First held a valid and properly perfected secured claim, one legitimate in all respects. *See generally Porter Novelli v. Bender*, 817 A.2d 185, 188 (D.C. 2003). Finally, the court reasoned that because City First "has been diligent in prosecuting its case and given that [appellants] had actual notice, . . . remained silent through every step of the litigation as it progressed, . . . [and] lacked good faith and failed to act promptly, granting [their] Motion to Vacate would be unduly prejudicial to [City First]."

---

[5] The trial court credited appellees' assertion that appellants had "engaged in similar [dilatory] conduct in their bankruptcy proceedings where they failed to appear before the court."

In sum, the trial court adequately assessed the relevant facts and did not abuse its discretion, *see Clark v Moler*, 418 A.2d 1039, 1041 (D.C. 1980), in finding that the *Walker* factors strongly supported denial of the motion to vacate.

*Affirmed*.